Commonwealth *v.* Barriere.

COMMONWEALTH *vs.* RICHARD L. BARRIERE.

No. 97-P-2350.

Berkshire. October 16, 1998. - February 5, 1999.

Present: ARMSTRONG, KASS, & FLANNERY, JJ.[1]

*Practice, Criminal,* Sentence, Mittimus. *Imprisonment,* Credit for time served.

A judge of the Superior Court acted properly to "correct" a mittimus to either add or subtract days of credit against a sentence imposed and being served, to reflect what the prisoner was entitled to at the time of sentencing. [290-291]

INDICTMENTS found and returned in the Superior Court Department on June 6, 1990.

Motions for relief and for reconsideration were considered by *Francis X. Spina,* J., and a motion to vacate was considered by *Daniel A. Ford,* J.

*John F. Dalsey* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

KASS, J. Some three years after sentencing, and two years and eight months after a first correction of the mittimus prescribing the time to be served by Richard Barriere, a judge of the Superior Court further corrected the mittimus by revoking a 251-day credit and adding those 251 days back into the time that Barriere was to serve in State prison. Barriere claims on appeal that the late — and to him adverse — correction of the mittimus was legally erroneous on procedural and substantive

---

[1]This case was heard by Justices Armstrong, Kass, and Flannery. Justice Flannery died before the draft was written and circulated. Justice Smith joined the panel and participated in this decision.

grounds. We conclude that Barriere was not entitled to a credit for time spent resisting extradition.

1. *Facts.* Following a defense motion for a continuance, a judge of the Superior Court set August 26, 1991, as a trial date for Barriere, who was charged with trafficking in more than 200 grams of cocaine and conspiracy to violate the controlled substance laws. Barriere did more than fail to show up for trial; he vanished. Some fourteen months later (an estimate based on inferences drawn from dates in the record), he was found resident in a St. Louis County (we assume in Missouri) jail. From that locale, Barriere resisted extradition for 251 days, until July 6, 1993. On that date he was returned to Massachusetts (Berkshire County), where he was ordered held without bail.

On December 7, 1993, Barriere pleaded guilty to a lesser (28 grams to 100 grams) charge of trafficking in cocaine and to the conspiracy charge. A Superior Court judge imposed a sentence of from twelve to fifteen years for trafficking and, to be served on and after, from nine to fifteen years on the conspiracy charge. Barriere received a 160-day credit against his trafficking sentence for time spent in jail in Massachusetts awaiting disposition. Four months later, Barriere's lawyer sent a letter to the sentencing judge suggesting that under a recent decision by a judge of the United States District Court for the District of Massachusetts, Beauchamp *vs.* Murphy, U.S. Dist. Ct., No. 93 Civ. 11306 (D. Mass. Nov. 18, 1993), Barriere was entitled to credit against his "wrap up" date of the 251 days of confinement Barriere had spent in St. Louis County while resisting extradition. The Federal decision — it was not a published one — was in response to a petition for a writ of habeas corpus, and the judge had granted the writ. The Superior Court judge treated the letter he had received on Barriere's behalf as a motion to correct the mittimus and allowed the motion, i.e., he credited Barriere with an additional 251 days served against his trafficking sentence.

On review by the Court of Appeals for the First Circuit, the Beauchamp decision was reversed. *Beauchamp* v. *Murphy*, 37 F.3d 700, 704-708 (1st Cir. 1994), cert. denied, 514 U.S. 1019 (1995). That opinion was published September 26, 1994, but apparently escaped the notice of the Commonwealth. What seems to have galvanized the Commonwealth into action was

the opinion in *Commonwealth* v. *Araujo*, 41 Mass. App. Ct. 928, 928-929 (1996), which, relying on the by now rehabilitated *Commonwealth* v. *Beauchamp*, 413 Mass. 60, 62 (1992), held that neither G. L. c. 127, § 129B, nor any other Massachusetts statute gave a prisoner credit against his sentence for time spent incarcerated while resisting extradition. Within three weeks of the publication of the *Araujo* opinion, the Commonwealth, on December 13, 1996, moved to further correct the mittimus by rescinding the 251 days of credit granted two years and eight and one-half months earlier, May 2, 1994. The sentencing judge allowed the Commonwealth's motion. On October 24, 1997, responding to Barriere's motion for reconsideration, a second judge of the Superior Court vacated the December 13, 1996, order on the grounds that the underlying motion had not been served on Barriere. The second judge, independently, allowed the Commonwealth's motion, and it is from that order that Barriere appeals.

2. *Whether the Commonwealth's motion is untimely.* Barriere argues that the Commonwealth, which was passive about his original request for 251 days' credit, cannot waltz into court more than two and two-thirds years later to undo the judicial order granting that credit.

First, Barriere argues, by failing in 1994 to oppose the letter requesting the judge to correct the mittimus — which the judge treated as a motion so to do — the Commonwealth has waived the right to object to the correction that was then made. Barriere attempts an analogy with such examples as Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979), providing that grounds not stated in a pretrial motion, if they could reasonably have been known, shall be deemed to have been waived.

Second, assuming the Commonwealth retained a right to undo the 1994 correction of the mittimus, Barriere contends that it should have exercised that right within the time for taking an appeal prescribed in Mass.R.A.P. 4(b), as amended, 378 Mass. 929 (1979) — thirty days — or at the most within a year, as that is the maximum time allowed under Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979), for enlarging the time to take an appeal from a final judgment or order. For that proposition, Barriere relies on *Commonwealth* v. *Mandile*, 15 Mass. App. Ct. 83, 87-92 (1983), in which we held that a motion to reconsider a judgment of dismissal made by the Commonwealth eighty-seven days after entry of that judgment was untimely. Without

specifying precisely what the outer limit for a motion for reconsideration in a criminal case might be in Massachusetts, we discussed approvingly, *id.* at 90-91, Federal cases that established the time allowed for claiming an appeal as the limit for motions for reconsideration.

The cases that establish limits on motions for reconsideration involve efforts to revise the final judgment or disposition of a case. That was not the nature of the Commonwealth's motion in this case. There is no attempt to revise either the judgments of conviction or the sentences imposed on Barriere. Although the Commonwealth had styled its December, 1996, motion as one for reconsideration, that label somewhat mischaracterized the motion's underlying purpose, which was not to have the judge consider the action anew, but to have the judge add, based on the ultimate result in a case thought to be controlling, days on the mittimus that had been wrongly subtracted. Compared to a judgment or sentence, which is the outgrowth of adjudication, a mittimus (from the Latin "we send") is a ministerial document. It is a warrant, executed on behalf of the court by a clerk, addressed to the sheriff who had custody of the accused during trial and to the future custodian (sheriff or superintendent of a correctional institution) of the prisoner, that directs where the prisoner shall be taken for incarceration, states what the sentence is, and states how many days of the sentence the prisoner is deemed to have served, commonly while awaiting trial and sentencing. General Laws c. 279, § 34, describes a mittimus as a "certified transcript [issued by the clerk] from the minutes of the court of the conviction and sentence, which shall authorize the officer to execute such sentence, and he shall execute it accordingly." See *Bolduc* v. *Commissioner of Correction*, 355 Mass. 765, 767 (1969), which holds that "a court has plenary power at any time to correct errors in its records," and the opinion placed a mittimus in that category. In that case, the mittimus had not correctly stated the sentence as set forth in the record of the disposition proceedings. Although eight years had intervened, the court concluded that the mittimus was properly corrected to reflect accurately the sentence that had been imposed. See also *Ariel* v. *Commonwealth*, 356 Mass. 194, 195-196 (1969), restating the plenary power of a court to correct a mittimus, in that instance by setting forth in the mittimus the reason for not suspending a sentence by reason of the defendant's inability to pay a fine.

In significant respect, then, the *Bolduc* and *Ariel* cases, which undertook to have the mittimus and sentence in each case match up, are different from *Commonwealth* v. *Layne*, 25 Mass. App. Ct. 1 (1987), in which the sentence as pronounced was "duly embalmed in the mittimus," *id.* at 3, but the judge thought, over three years later, that the clerk had not accurately recorded what he had said. On the record in that case, we thought it more than possible that the judge, although certainly acting in good faith, was engaging in an impermissible revision of a sentence. *Id.* at 5. In the instant case, the underlying sentence is not in question. The question is what credits should have been enscribed on the mittimus at the time of sentencing. As long as the person sentenced remains in custody, we are of opinion that, as to a statement of the credits to which the prisoner is entitled, the mittimus may be corrected to reflect adjustments required by law.

3. *Method of recording adjustment of credits against sentence imposed.* The difficulty in Barriere's case is that he, in the first instance, and the Commonwealth, in the second, sought (and got) more than correction of the mittimus to conform with a preexisting record.

Although we have made the observation that the sentences imposed on Barriere have never changed, the grant or denial of credits against completion of the sentences has a material bearing on when the incarcerated person walks out the prison doors. From Barriere's vantage, 251 days are very material. If the calculation of such credits were simply a matter of arithmetic accomplished by application of a table or known formula, then correction might fall in the ministerial category associated with conforming the mittimus to the record. As this very case illustrates, however, entitlement to credits which reduce the time remaining to be served on a sentence are often matters of judicial decision, in this case based on a constitutional question,[2] and, more often, based on interpretation of statutes and regulations. See, e.g., G. L. c. 127, §§ 129 (repealed by St. 1993, c. 432, § 10), 129B, and 149; G. L. c. 279, § 33A; 103 Code Mass. Regs. § 410 (1993). For examples of cases interpreting statutes and regulations bearing on credits against sentences, see *Commonwealth* v. *Grant*, 366 Mass. 272, 273-

---

[2]The claim asserted by the prisoner, ultimately unsuccessfully, in *Beauchamp* v. *Murphy*, 37 F.3d at 703, is that a failure to credit him with time spent resisting extradition unconstitutionally burdened his right to contest extradition.

274 (1974); *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427 (1978); *Commonwealth* v. *Aquafresca*, 11 Mass. App. Ct. 975, 976 (1981); *Commonwealth* v. *Foley*, 17 Mass. App. Ct. 238, 243-245 (1983); *Watts* v. *Commissioner of Correction*, 42 Mass. App. Ct. 951, 952-953 (1997); and *Commonwealth* v. *Boland*, 43 Mass. App. Ct. 451, 453-456 (1997). In a large number of cases, therefore, determining whether a credit is due involves an act of adjudication rather than a clerical correction.

We have considered whether a judicial order that is entered after sentencing and which adds a credit or vacates a credit against the sentence should be reflected by a correction of the mittimus. At first glance, something more seems to be happening than simple conformance of the mittimus to the original sentencing record. It is best not to be too enslaved by nomenclature. Functionally, the mittimus reflects credits against a sentence that a prisoner is entitled to at the time of sentencing. If by reason of developments in the law or through recognition of error in application of the law those credits are adjusted, they are, of course, adjusted as of the date of sentencing and the original sentencing record is adjusted. Logically, the mittimus should be corrected to conform to those adjustments. There is sound practical reason to correct the mittimus. As the mittimus serves to instruct the officer who executes the sentence, among other things as to credits, it is useful to have adjustments to those credits engrafted onto the same document. That procedure may not be mandated, but it is certainly not in error.

> *Order correcting the mittimus*
> *to vacate 251-day credit*
> *affirmed.*