COMMONWEALTH *vs.* BYRON DEWELDON.

No. 10-P-1357.

Barnstable. May 4, 2011. - October 12, 2011.

Present: MILLS, SIKORA, & RUBIN, JJ.

*Sex Offender. Practice, Criminal,* Sentence. *Words,* "Prisoner."

In an action seeking civil commitment of the defendant as a sexually danger-
ous person, a Superior Court judge properly determined that the defendant
was a lawful prisoner subject to the process of the sexually dangerous
person statutory scheme, where, as of the date of the Commonwealth's
submission of a petition to commit the defendant civilly, the Department of
Correction had not exercised its discretionary judgment on his entitlement
to sentence credit in the underlying criminal action. [631-634]

CIVIL ACTION commenced in the Superior Court Department on
December 17, 2007.

A motion to dismiss was heard by *Richard F. Connon,* J., and
a motion for reconsideration was considered by him; the case
was heard by *Gary A. Nickerson,* J.

*John S. Day* for the defendant.

*Robert D. Moriarty,* Assistant District Attorney, for the
Commonwealth.

SIKORA, J. Massachusetts law permits the Commonwealth to
file a petition for civil commitment of an individual as a sexu-
ally dangerous person (SDP) only if that individual is a lawful
prisoner at the time of the presentation of the petition to the
Superior Court. G. L. c. 123A, § 12(*b*).[1] *Coffin* v. *Superinten-*

---

[1]General Laws c. 123A, § 12(*b*), inserted by St. 1999, c. 74, § 8, provides
as follows:

"When the district attorney or the attorney general determines that the
prisoner or youth in the custody of the department of youth services is
likely to be a sexually dangerous person as defined in section 1, the
district attorney or the attorney general at the request of the district

*dent, Mass. Treatment Center*, 458 Mass. 186, 188-189 (2010). "SDP commitment is only available if the procedure is initiated before the termination of a period of criminal confinement; if it is not, the statute no longer applies." *Commonwealth* v. *Gillis*, 448 Mass. 354, 359 (2007). However, "[t]he fact that a person is in State custody is not enough to make him a 'prisoner' within the meaning of § 12(*b*)." *Commonwealth* v. *Allen*, 73 Mass. App. Ct. 862, 864 (2009). The Commonwealth may not file an SDP petition against prisoners who are in custody "solely as a result of a clerical error," *Commonwealth* v. *Allen, supra*, or "incarcerated under a facially unconstitutional statute." *Coffin* v. *Superintendent, Mass. Treatment Center*, 458 Mass. at 189.

After a civil trial, a Superior Court judge found the defendant to be an SDP as defined in G. L. c. 123A, § 1,[2] and committed him to the Bridgewater Treatment Center (center) for one day to life pursuant to G. L. c. 123A, § 14(*d*). On appeal, the defendant argues that the judge should have dismissed the petition because he was not a lawful prisoner at the time of the filing of the petition on December 17, 2007. To resolve that argument we must work our way through a chronology of offenses and through multiple concepts and measurements of the law of criminal sentencing. For the following reasons, we affirm the judgment establishing the defendant's SDP status and commitment.

*Background.* 1. *Defendant's criminal history.* In May of 1995, the defendant pleaded guilty in Superior Court in Barnstable County to a single count of indecent assault and battery on a child under age fourteen, G. L. c. 265, § 13B. The indictment charged him with commission of the offense in Eastham during August of 1993. Also in May of 1995, the defendant pleaded

---

attorney may file a petition alleging that the prisoner or youth is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court where the prisoner or youth is committed or in the superior court of the county where the sexual offense occurred."

[2]After a detailed analysis of the testimony of six expert witnesses in the course of a six-day trial, the judge concluded, "The Commonwealth has proved beyond a reasonable doubt that Byron DeWeldon is a sexually dangerous person by virtue of his suffering from a mental abnormality (clinically diagnosed as Paraphilia Not Otherwise Specified) which renders him likely to re-offend if not confined to a secure facility."

guilty in Rhode Island Superior Court to three counts of second degree child molestation. See R.I. Gen. Laws § 11-37-8.3 (2006). The Rhode Island charges were that he had assaulted the same Massachusetts juvenile and two other boys in Newport during 1993. On the Massachusetts offense he received a suspended sentence of from nine to ten years; and on the Rhode Island offense, a suspended sentence of ten years. Both sentences included probationary terms; the Massachusetts sentence was to run concurrently with the Rhode Island sentence.

In 1997, the defendant moved to California. Rhode Island and Massachusetts transferred his probation supervision to that State. In January of 1998, police arrested him for providing marijuana to a minor. He pleaded guilty to contributing to the delinquency of a minor, Cal. Penal Code § 272 (2008). In June of 1998, extradition proceedings returned him to Rhode Island. In September, a Rhode Island judge re-probated him with additional conditions. In November, police in Rhode Island arrested him on a new charge of child molestation. In June, 1999, a Rhode Island judge found him in violation of probation and imposed the original sentence of ten years in State prison. Meanwhile, the Massachusetts Department of Probation lodged a warrant with the Rhode Island Department of Correction for the subsequent appearance of the defendant in Superior Court in Barnstable County for revocation of probation and imposition of the Massachusetts sentence.

2. *Defendant's incarceration.* The defendant remained imprisoned in Rhode Island until his parole in May of 2004. During incarceration, he participated in multiple rehabilitative programs and as a result earned 570 days of good time credit. Upon his parole, Massachusetts took custody of him. The Department of Probation charged him with violation of the terms upon which his suspended Massachusetts sentence depended. He remained confined in a house of correction for the ensuing two years while his counsel sought to dismiss the Massachusetts probation surrender proceeding and to resolve an open charge in Rhode Island.

In June, 2006, a Superior Court judge conducted a surrender hearing and found the defendant in violation. On August 18, 2006, the judge imposed the original sentence of from nine to

ten years. The judge credited the defendant with 3,028 days (or eight years and 106 days) for time served in Rhode Island and Massachusetts.[3] The judge did not grant any credit for the good time earned in Rhode Island. On August 23, 2007, the Massachusetts Department of Correction (DOC) notified the Barnstable district attorney of the defendant's anticipated release date of May 3, 2008.

3. *Defendant's motion to correct the mittimus.* On October 22, 2007, the defendant filed a motion in Superior Court to correct the mittimus[4] so that his Massachusetts sentence would run nunc pro tunc from November 4, 1998, the date of his initial detention for violation of his Rhode Island probation, rather than August 18, 2006, the date of his probation surrender hearing and sentencing in Massachusetts.[5] The defendant sought this change so that he could accrue earned good time in Massachusetts, pursuant to G. L. c. 127, § 129D, for his participation in rehabilitative programs during incarceration in Rhode Island. That provision confers discretionary authority upon

---

[3]The judge apparently credited the defendant with too many days served in Rhode Island. According to the judge's calculation, the defendant's Rhode Island sentence began on May 4, 1998. However, the record indicates that the defendant sexually assaulted another child in late 1998 and was arrested for this offense on November 4, 1998. Thus, his Rhode Island confinement could not have begun on May 4, 1998, and most likely started in November, 1998. Nonetheless, the starting date of the defendant's Rhode Island sentence is immaterial to the outcome of the appeal, as explained below.

[4]A mittimus "is a warrant, executed on behalf of the court by a clerk, addressed to the sheriff who had custody of the accused during trial and to the future custodian (sheriff or superintendent of a correctional institution) of the prisoner, that directs where the prisoner shall be taken for incarceration, states what the sentence is, and states how many days of the sentence the prisoner is deemed to have served, commonly while awaiting trial and sentencing." *Commonwealth v. Barriere*, 46 Mass. App. Ct. 286, 289 (1999). "Compared to a judgment or sentence, which is the outgrowth of adjudication, a mittimus (from the Latin 'we send') is a ministerial document." *Ibid.*

For discussions of the function of the mittimus, see *Commonwealth v. Burrone*, 347 Mass. 451, 452-453 (1964); *Bolduc v. Commissioner of Correction*, 355 Mass. 765, 767 (1969); *Commonwealth v. Layne*, 25 Mass. App. Ct. 1, 2-5 (1987); *Commonwealth v. Clark*, 53 Mass. App. Ct. 342, 345-346 (2001).

[5]The defendant's request for November 4, 1998, as the starting point of his sentence, rather than May 4, 1998, reinforces our conclusion that his detention in Rhode Island began on the November date and that the judge mistakenly credited him with time served from the May date. See note 3, *supra.*

DOC to grant such credit.[6] Because the mittimus showed that the defendant started his Massachusetts sentence on August 18, 2006, DOC notified him that he lacked the status of a sentenced prisoner for purposes of G. L. c. 127, § 129D, while he was incarcerated in Rhode Island and that therefore he could not receive Massachusetts earned good time during that period. See *McNeil* v. *Commissioner of Correction*, 417 Mass. 818, 826 (1994) (only sentenced prisoners may receive earned good time under § 129D). DOC advised the defendant that he would be eligible to receive earned good time for his participation in the Rhode Island programs if a corrected mittimus designated November 4, 1998, as the starting date of his sentence.

On December 6, 2007, the judge allowed the defendant's motion to correct the mittimus; however, the judge wrote in the margin of the motion that "the effective date of this allowance will be January 2, 2008." On January 2, 2008, the judge reconsidered his decision on the defendant's motion to correct the mittimus and wrote, "Upon further review, the defendant's release date on this matter shall be April 12, 2008."

By letter sent to the court on March 13, 2008, DOC advised the judge that his two orders on the defendant's motion to correct the mittimus conflicted "because although the December 6 endorsement might result in a discharge earlier than March 29, 2008, the January 2 endorsement provides that the release date from the sentence 'shall be April 12, 2008.' " The judge then issued a formal order on April 16, 2008, explicitly designating the starting date of the defendant's sentence as November 4, 1998.[7]

4. *Defendant's motion to dismiss the SDP petition.* Meanwhile, on December 17, 2007, the Barnstable district attorney filed the

---

[6]In pertinent part, G. L. c. 127, § 129D, as appearing in St. 1989, c. 321, provides, "For . . . satisfactory performance . . . in any . . . program or activity which the superintendent of the institution shall deem valuable to [the] prisoner's rehabilitation, the commissioner [of DOC] *may* grant . . . a . . . deduction of sentence of not more than two and one-half days per program or activity for each month [of the prisoner's participation up to] a maximum monthly total of seven and one-half days" (emphasis supplied). DOC viewed such programs or activities to include those offered by the Rhode Island Department of Correction.

[7]The judge specified that he was issuing the order upon further review of the defendant's motion to correct the mittimus.

petition pursuant to G. L. c. 123A, § 12, for civil commitment of the defendant as an SDP. The defendant moved to dismiss the SDP petition as untimely. He argued that he was entitled to the earned good time for his participation in the Rhode Island programs and that such credit would have brought his sentence to expiration before the date of the Commonwealth's SDP petition.

In May of 2008, the judge conducted a hearing upon the motion. Sentencing counsel for DOC testified that DOC could not award the Rhode Island good time earned before the Massachusetts sentencing in August, 2006, because until then, the defendant occupied the status of a pretrial detainee ineligible for credit under the rule of *McNeil* v. *Commissioner of Correction*, 417 Mass. at 826. Sentencing counsel testified further that the judge's April 16, 2008, order correcting the mittimus made the defendant eligible to receive earned good time for the Rhode Island programs but that DOC had not evaluated the merits of his request because his criminal sentence had already expired.

The judge concluded that the defendant had remained a lawful prisoner as of the petition date of December 17, 2007, and denied the motion to dismiss. The SDP process went forward to trial, adjudication of SDP status, and commitment to the center.

*Analysis.* The defendant contends that the judge effectively corrected the mittimus of his Massachusetts sentence on December 6, 2007, so as to establish its starting date as November 4, 1998; and that the correction per se credited him with the 570 days of Rhode Island earned good time so as to bring his Massachusetts sentence to completion before the petition date of December 17, 2007,[8] and to entitle him to dismissal of the petition. The following reasons defeat that argument.

First, the judge's allowance on December 6, 2007, of the motion to correct the mittimus included the reservation that the

[8]The defendant asserts that his Massachusetts sentence "expired at least six months prior to [the petition date of] December 17, 2007." Although he does not provide a detailed computation, we infer as follows. (1) The Massachusetts sentence extended for as much as ten years from November 4, 1998, or to November 3, 2008. (2) The alleged mittimus correction of December 6, 2007, brought with it the credit of 570 days to be subtracted from the November 3, 2008, end date. (3) That subtraction (one year, six months, nineteen days) would yield a release date of approximately April 14, 2007.

effective date of the allowance was to be January 2, 2008, and, on the latter date, he reconsidered the motion and corrected the release date to April 12, 2008. Thus the actual date on which the mittimus was corrected to give the November 4, 1998, start date was not December 6, 2007, but rather April 16, 2008, or some four months after the day the Commonwealth filed the SDP petition. See note 7, *supra,* and the accompanying text. The judge's expression on December 6, 2007, of a willingness to allow the correction on January 2, 2008, was not a presently effective ruling or order. "A judge's power to reconsider his own decisions during the pendency of a case is firmly rooted in the common law, and the adoption of [a rule of criminal procedure] was not intended to disturb this authority." *Commonwealth* v. *Haskell,* 438 Mass. 790, 792 (2003). See *Commonwealth* v. *Downs,* 31 Mass. App. Ct. 467, 469 (1991) ("Judges are not condemned to abstain from entertaining second thoughts that may be better ones"). He retained discretion on January 2 to defer action to April.

Second, even if December 6, 2007, were the effective date of the allowance of the motion to correct the mittimus, the action would not have accomplished the accreditation of the desired 570 days. The motion called for the judge to amend the starting date of the Massachusetts sentence; it did not request the award of the Rhode Island earned good time. The mittimus correction simply made the defendant a sentenced prisoner from November 4, 1998, onward, and thereby rendered him *eligible* to receive the Rhode Island good time credit.[9] In accordance with G. L. c. 127, § 129D, discretion to award earned good time to prisoners remained vested in the DOC. See note 6, *supra; Piggott* v. *Commissioner of Correction,* 40 Mass. App. Ct. 678, 684 (1996) (§ 129D "unambiguously gives the commissioner discretion whether or not to award earned good time credits for participation in rehabilitative programs"). A prisoner does not have any entitlement to earned good time until the commissioner acts.[10]

---

[9]In a postargument letter requested by the panel, the defendant's counsel accurately reported that "the clearly-stated purpose of [his] motion to correct the mittimus . . . was to render [him] eligible to receive credit, in Massachusetts, for the sentence deductions he earned in Rhode Island."

[10]While prisoners do not have any right to receive earned good time, DOC has implemented a regulation which provides that "[d]eductions from sentence

Commonwealth *v.* DeWeldon.

See *Haverty* v. *Commissioner of Correction*, 440 Mass. 1, 5-6 (2003) (prisoners have no statutory or constitutional right to earned good time). See also *Jackson* v. *Hogan*, 388 Mass. 376, 379 (1983). Therefore, to receive earned good time for his participation in the Rhode Island programs, the defendant needed still to petition the commissioner and to receive a favorable decision. Furthermore, that credit must have accrued to him before the petition date of December 17, 2007. No statutory or regulatory source provides for retroactive effect for good time credit in the present circumstances.

Finally, the exercise of independent judgment by DOC would operate with special importance in these circumstances. The case required DOC to evaluate the quality of rehabilitative programs administered not under its own auspices, but rather those of a sister State. We cannot assume that DOC would mechanically adopt the determination by a separate government of the quality of rehabilitation or the quantity of credit attributable to those programs.[11] In the proper exercise of the police power,

---

under [G. L. c. 127, § 129D], once earned, shall not be forfeited." 103 Code Mass. Regs. § 411.11(2) (2004). Prior to implementation of this regulation, the Supreme Judicial Court recognized that good time credits are "a State-created liberty interest protected by the due process guarantees of the United States Constitution." *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 389 (1983). Thus, prisoners have regulatory and constitutional protection for earned good time which DOC has awarded them, but such protection does not arise until DOC actually makes an award. The distinction is the difference between an expectancy and an entitlement. See Donovan, Waving an Ephemeral Carrot Under *Haverty* v. *Commissioner of Corrections*: Opportunities to Earn Good-Time Credits Might Deserve Praise — But Not State Constitutional Protection, 31 N.E. J. on Crim. & Civ. Confinement 209, 222 (2005) ("Theoretically, a loss of seventy-five days of accrued statutory good-time credits is the same as a bar on earning seventy-five days of rehabilitative credits. In both situations, the state is punishing the offender, but only in the former situation does precedent clearly establish due process protections").

[11]At the hearing upon the motion to dismiss the SDP petition in May of 2008, defendant's counsel argued that 103 Code Mass. Regs. § 411.12 (2004) indicates "that good time from other states is recognized so long as there are certain conditions." However, that provision does not compel the acceptance of earned good time awarded by other States; it provides a process by which the DOC, again, "may" award earned good time to inmates serving Massachusetts sentences in a correctional institution operated by the Federal government or another State. See *id.* ("An inmate . . . may be granted deductions from sentences as [set out] below").

The programmatic conditions for eligibility for such sentence "deductions"

DOC retained separate sovereign authority and nondelegable responsibility to assess the entitlement and the timing of the release of a recidivist offender into its own population.[12] In this instance, it never received the occasion necessary for the exercise of that judgment.

*Conclusion.* As of the date of the Commonwealth's submission of a petition under G. L. c. 123A, § 12(*b*), DOC had not exercised its discretionary judgment of his entitlement to sentence credit. That determination was necessary for an entitlement to release before the petition date. He therefore remained a lawful prisoner subject to the process of the SDP statutory scheme.

> *Judgment and order of commitment affirmed.*

---

or credit include (1) documentation "on a progress report" of the inmate's participation; (2) staff monitoring, staff coordinating, attendance taking, and assessment of the program's "service to inmates or to the community"; and (3) optional requirement by DOC of a written program summary. 103 Code Mass. Regs. § 411.12(1), (2), (3).

[12]The concern of the Legislature with the treatment of recidivist sexual offenders appears in both the SDP scheme, G. L. c. 123A, §§ 1-16, and the sex offender registration law, G. L. c. 6, §§ 178C-178Q.