James L. VALENTINE, Plaintiff,

v.

Frank H. GRAY et al., Defendants.

Civ. A. No. 74–89.

United States District Court,
S. D. Ohio, E. D.

Dec. 31, 1975.

John H. Burtch, Columbus, Ohio, for plaintiff.

Frederick L. Ransier, Asst. Atty. Gen. of Ohio, Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This matter is before the Court for judgment upon stipulated facts. The complaint is brought pursuant to 42 U.S.C. § 1983 (1970) and its jurisdictional counterpart, 28 U.S.C. § 1343(3) (1970). The question presented is whether the First and Fourteenth Amendments to the United States Constitution guarantee a state prisoner the right to engage in a business enterprise through use of the United States mails while he is lawfully incarcerated by the state.

The stipulations of the parties indicate that while incarcerated in the Chillicothe Correctional Institute, Chillicothe, Ohio, plaintiff James L. Valentine began receiving inquiries through the mail concerning certain investment plans of his which had been summarized in a business magazine. Plaintiff's response to these inquiries was a form letter offering for sale a series of seven "special reports." The first report, entitled "How to Have Local Businessmen Give You $400,000 in Addition to Receiving $35,000 and a New Car," was offered at a cost of $100.00. Other reports were offered at prices ranging from $25.00 to $500.00. Plaintiff's program has not been found to be fraudulent or otherwise in violation of any law.

By use of a mail inspection procedure not challenged here, authorities at the institution learned that Mr. Valentine was engaged in this business enterprise. Plaintiff was thereafter found guilty by the Rules Infraction Committee of violating Administrative Regulation 814(a)(3)(c), which prohibits any inmate from "corresponding with any person, firm, association, or other entity for the purpose of soliciting funds or property without the prior approval of the Managing Officer." Plaintiff does not contend that he sought any prior approval as provided by the regulation. The Committee upon finding Mr. Valentine guilty ordered him reprimanded and also provided that his mail be specially censored for business communications and that all such incoming communications be returned to the sender at plaintiff's expense. On April 25, 1974, a judge of this Court ordered defendants to preserve and impound as evidence those materials seized pursuant to the decision of the Rules Infraction Committee. As a result, defendants presently have in their custody numerous boxes of materials addressed to Mr. Valentine, including some letters which are accompanied by certified checks or money orders. Also held are a few magazines such as *Forbes* and *Business Week,* and annual reports of corporations. Personal correspondence to and from Mr. Valentine is not being withheld.

Plaintiff first argues that he and those with whom he communicates have a constitutional right to correspond, even though such correspondence is in furtherance of a mail order endeavor conducted by Mr. Valentine for profit. He also argues that even if he has no federally protected right to engage in a business enterprise, the defendants have gone too far in intercepting all his commercially-oriented mail, such as business magazines and corporate reports. He correctly observes that these latter materials are not directly related to his mail order enterprise.

In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) the Supreme Court considered a First Amendment challenge to regulations of the California Department of Corrections

which restricted the permissible content of personal communications of inmates. Prisoners were prohibited from writing letters in which they "unduly complain[ed]" or "magnif[ied] grievances." "[I]nflammatory political, racial, religious or other views or beliefs" were also proscribed. See 416 U.S. at 399, 94 S.Ct. at 1804, 40 L.Ed.2d at 232. Emphasizing that it had before it a case concerning "direct personal correspondence between inmates and those who have a particularized interest in communicating with them," 416 U.S. at 408, 94 S.Ct. at 1809, 40 L.Ed.2d at 237 (footnote omitted), the Court rejected "any attempt to justify censorship of inmate correspondence merely by reference to certain assumptions about the legal status of prisoners." 416 U.S. at 409, 94 S.Ct. at 1809, 40 L.Ed.2d at 238. Specifically declining to consider the question of "mass mailings," 416 U.S. at 408 n. 11, 94 S.Ct. at 1809, 40 L.Ed.2d at 237, the Court held that in the case of direct personal correspondence, "the First Amendment liberties of free citizens are implicated in censorship of prisoner mail." 416 U.S. at 409, 94 S.Ct. at 1809, 40 L.Ed.2d at 238. Applying this analysis, the Court struck down the California regulations, finding that the state officials "failed to show that these broad restrictions on prisoner mail were in any way necessary to the furtherance of a governmental interest unrelated to the suppression of expression," 416 U.S. at 415, 94 S.Ct. at 1812, 40 L.Ed.2d at 241, and finding that the regulations were "far broader than any legitimate interest of penal administration demands." 416 U.S. at 416, 94 S.Ct. at 1813, 40 L.Ed.2d at 242.

In addition to its disclaimer of any consideration of mass mailings and its emphasis upon "direct personal correspondence," the Supreme Court in *Procunier* cited in an approving manner a regulation of the Federal Bureau of Prisons which provides, "No inmate may be permitted to direct his business while he is in confinement." 416 U.S. 414 n. 14, 94 S.Ct. 1812, 40 L.Ed.2d 241. I conclude that the standards enunciated in *Procu-*

*nier* have no bearing upon a regulation which affects not the content of expression in personal mail, but the conduct of a business enterprise by mail. In the judgment of this Court, the Constitution does not protect an inmate's business activities, whether or not the mails are necessary for the conduct of the enterprise. The retraction of various privileges and rights is a natural incident to lawful incarceration, see *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1059–60, 92 L.Ed. 1356, 1369 (1948). This Court holds that Administrative Regulation 814(a)(3)(c) of the Ohio Department of Rehabilitation and Correction is not constitutionally infirm.

The remaining question presented is whether plaintiff's rights are abridged by the seizure of all his commercially-related mail, including that which is not directly related to his unauthorized solicitation scheme. The decision of the Rules Infraction Committee in plaintiff's case, that the superintendent "issue an order for special censorship of all of Plaintiff's incoming and outgoing mail," has evidently been implemented by seizing such innocuous material as annual reports of corporations, advertisements from various companies, and business magazines such as *Forbes* and *Business Week.* Such material is at best only peripherally related to plaintiff's violation of Administrative Regulation 814(a)(3)(c).

The Ohio Department of Rehabilitation and Correction has established, in Administrative Regulation 804(a), three classes of rule violations, each carrying a different maximum disciplinary sanction. Plaintiff was charged with a Class II violation; 804(a) provides as a "remedy" for such a violation the following:

Class II Rule violations shall be limited to disciplinary isolation from the general prison population, administrative transfer, and shall include remedies for Class III violations.

Class III Rule violations shall be limited to loss of privileges for a reasona-

ble time, reclassification, reprimands, warnings, extra work assignments, and reasonable restitution.

It is clear that various disciplinary avenues, aside from censorship, were available to defendants in plaintiff's case. The seizure of commercial materials unrelated to the unauthorized solicitation of funds can be justified, if at all, only under the "loss of privileges for a reasonable time" provision in 804(a). Even assuming that the receipt of magazines and like material is for a state inmate a privilege and not a right, the regulation by its terms limits the permissible duration of a loss of privileges to "a reasonable time." And, although the Supreme Court has consistently refused to decide whether a prisoner retains his First Amendment rights upon incarceration, see *Wolff v. McDonnell,* 418 U.S. 539, 575–76, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935, 961–63 (1974), I am convinced that the state must make some showing of reasonable justification before an inmate's access to innocuous periodicals may be circumscribed. See *Frazier v. Donelson,* 381 F.Supp. 911, 919–20 (E.D.La.1974) aff'd without opinion 520 F.2d 941 (5th Cir.1975). A temporary retention of all of plaintiff's business-oriented mail may have been justified under Administrative Regulation 804(a), but this Court does not comprehend any justification for the continued retention of materials which cannot be said to be in direct furtherance of plaintiff's unauthorized solicitation scheme.

Now, therefore, it is ADJUDGED and DECREED that Administrative Regulation 814(a)(3)(c) of the Ohio Department of Rehabilitation and Correction is not violative of the First and Fourteenth Amendments to the United States Constitution. It is ORDERED that this Court's order of April 25, 1974, requiring defendants to preserve and impound all plaintiff's confiscated mail, is hereby dissolved.

It is further ORDERED that defendant Frank H. Gray will release to plaintiff those materials currently held by him pursuant to this Court's April 25,

1974 order, which are not upon inspection found to be in direct furtherance of any mail order solicitation scheme of plaintiff, including, but not limited to, annual reports of corporations, advertisements from companies, and magazines. It is further ORDERED that defendant Gray is enjoined from withholding from plaintiff publications and periodicals mailed to him which are not directly related to any mail order scheme of plaintiff. Nothing contained in this order prohibits defendant Gray or his agents from assessing against plaintiff appropriate disciplinary sanctions on future occasions pursuant to valid departmental regulations. Further, defendant Gray may in conformity with this order return to the sender any materials mailed to plaintiff which are directly related to any unauthorized business enterprise of plaintiff, and he may refuse to permit plaintiff to mail out of the institution any items directly in furtherance of such an enterprise.

All other forms of relief requested by plaintiff are DENIED. No security is required of plaintiff.