ANTHONY JACKSON vs. WILLIAM HOGAN & others.[1]

Plymouth. December 9, 1982. — March 9, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Imprisonment. Constitutional Law,* Imprisonment. *Civil Rights.*

In a civil rights action under G. L. c. 12, § 11I, summary judgment was properly entered for the defendant correctional employees where the plaintiff, an inmate of a correctional institution, had presented no issues of fact respecting his claim that the denial of his requests for a transfer within the institution was racially motivated [377-378] or that he had been improperly denied the opportunity to work [378-379].

An inmate of a correctional institution who alleged that his personal property had been improperly taken from him by a correctional employee set forth, by affidavits, sufficient facts to present an issue for trial as to whether his property had been taken from him for reasons unrelated to prison security. [380]

Affidavits submitted by an inmate confined in the segregation unit of a correctional institution set forth no facts to rebut statements of correctional officials, made in support of their motion for summary judgment in the inmate's civil rights action, that his security status precluded his attendance at group religious services. [381-383]

An inmate of a correctional institution who alleged that he had not been allowed to make purchases of fruit from a local supermarket through voluntary efforts of employees of the institution's canteen, a service not part of the canteen's regular program, set forth no violation of any legal right. [383-384]

CIVIL ACTION commenced in the Superior Court Department on September 30, 1980.

---

[1] At the time of this action, William Hogan was Commissioner of Correction. During the times in question, the other defendants and their positions were as follows: Michael Donahue, general counsel to the Department of Correction; Charles Gaughan, superintendent, Massachusetts Correctional Institution at Bridgewater; Ronald Amaral, superintendent, S.E.C.C.; George Vose, deputy superintendent, S.E.C.C.; Edgar LeBlanc, a correctional officer at S.E.C.C.; and Carol Bergstrom, a canteen employee at the Massachusetts Correctional Institution at Bridgewater.

The case was heard by *Keating*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*William G. Billingham* for the plaintiff.

*Dianne L. Solomon*, Assistant Attorney General, for the defendants.

NOLAN, J. The plaintiff, an inmate with protective custody status at the Southeastern Correctional Center at Bridgewater (S.E.C.C.), brought an action, pro se, pursuant to G. L. c. 12, § 11I, alleging violations of his civil rights by the defendants, all of whom were employees of the Department of Correction (department). Specifically, the plaintiff cited the refusal to grant him a transfer to the "cadre unit" at S.E.C.C; the failure to allow him the opportunity to hold an inmate job and thereby obtain compensation and "good time" credit; the confiscation of certain items of personal property; the refusal to allow him to attend religious services; and the refusal to sell him fruit. The verified complaint alleged that certain of the defendants engaged in each of the above activities, and that all of the defendants were involved in a systematic effort to deprive the plaintiff of his civil rights.

On the plaintiff's motion, present counsel was appointed. The defendant Donahue moved to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The remaining defendants moved for summary judgment, and affidavits in support and in opposition to the motions were filed. All motions were allowed without opinion, and judgment was entered for the defendants. The plaintiff then filed an appeal in the Appeals Court, and we transferred the case here on our own motion.

1. *The request for transfer.* Jackson is classified as a maximum security inmate. He was originally incarcerated in 1976 at the Massachusetts Correctional Institution at Walpole (M.C.I. Walpole), but was transferred to S.E.C.C., a medium security institution, for personal security reasons in 1977. In 1979, he was cited for disciplinary matters and confined in the "fort" section of S.E.C.C., an isolation segregation unit. He has remained in the "fort" because of his November, 1979, classification

as a maximum security inmate awaiting transfer. His requests for transfer to the "cadre unit"[2] a housing unit at S.E.C.C., were denied.

Jackson acknowledges that decisions on requests for transfer are within the discretion of the Commissioner. See *Four Certain Unnamed Inmates of Mass. Correctional Inst. at Walpole* v. *Hall*, 550 F.2d 1291, 1292 (1st Cir. 1977). He alleges, however, that the denial of his requests were racially motivated and thus an abuse of discretion. However, other than statements made on "information and belief" and an assertion that "all prisoners assigned (by defendants) and presently living in the Cadre [unit] are white," he offers no facts in support of his allegation.

Allegations made on "information and belief" need not be given weight on a motion for summary judgment. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n.12 (1976). The bare fact, if it were one, that all inmates in the cadre unit were white would not be enough to support a claim that Jackson's requests to transfer to that unit were denied because of his race. Jackson has also completely failed to state facts which would indicate that he would meet even the minimal criteria for transfer to a cadre unit or that he has fulfilled other regulatory requirements for application to those units. See 103 Code Mass. Regs. 453.00-453.14 (1978). Entry of summary judgment in favor of the defendants on this issue was proper.

2. *The denial of work privileges.* Jackson alleges that he was improperly denied the opportunity to work and to earn the compensation and the "good time" credits given to prisoners who perform satisfactory work. G. L. c. 127, § 129D. He contends that this denial violates his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution. The defendants argue that Jackson's status as a maximum security, protec-

---

[2] A cadre is defined by 103 Code Mass. Regs. 453.06 (1) (1978), as: "A core group of residents with special skills or abilities (i.e., cooking, maintenance, clerical, drug counseling, etc.) utilized in providing direct services to a state correctional facility on a standard work schedule basis."

tive custody inmate in a medium security facility restricts his opportunity for work because he cannot move freely about in the prison population — a requirement for the limited number of jobs available in the "fort."

The flaw in Jackson's argument is that, as a prison inmate, Jackson does not have an unqualified right to work and to receive the attendant benefits. At best, Jackson as of right "shall be eligible to participate in programs available within correctional facilities," 103 Code Mass. Regs. 464.07 (1) (1981), and may be selected and assigned to such programs according to procedures established by regulations. 103 Code Mass. Regs. 464.07 (2) (1981). Cf. G. L. c. 127, § 49B (prisoners *may* be eligible for certain work programs [emphasis added]). These programs may provide educational, training, or employment opportunities, 103 Code Mass. Regs. 464.06 (1978). Prisoners who satisfactorily participate in any of these programs may be granted deductions from their sentences. G. L. c. 127, § 129D. 103 Code Mass. Regs. 411.01-411.14 (1978). Jackson has not alleged that he has been deprived of any right that he may have had to be eligible for such programs. Any right he might have could also be constitutionally restricted by rules stemming from valid penological concerns such as security and order. See *Bell* v. *Wolfish,* 441 U.S. 520, 545-547 (1979); *Wolff* v. *McDonnell,* 418 U.S. 539, 556-558 (1974). Certainly Jackson has no constitutional right to "good time" deductions. *Id.* at 557.

Viewing Jackson's verified complaint and affidavit and the inferences which might be drawn from them in the light most favorable to him, *Stetson* v. *Selectmen of Carlisle, supra* at 763, we conclude that they do not set forth "specific facts showing that there is a genuine issue for trial," Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974), concerning the propriety of any denial, if there was one, of his alleged right to work. The motion for summary judgment on this issue was properly allowed.

Jackson *v.* Hogan.

3. *The confiscation of personal property.* Jackson con-
tends that his property[3] was taken from him as part of a
plan to make him so uncomfortable at S.E.C.C. that he
would seek transfer. He has offered affidavits, apparently
from two fellow inmates, who aver that they were present
at a conversation between Jackson and Vose at which Vose
told Jackson his property was taken for that reason. Jackson
further asserts that the seizure of the items came only after
he had successfully sought an injunction against a transfer
to M.C.I. Walpole two and one-half months after he was
confined in the "fort." The defendants have not offered
copies of any rules or regulations of the prison which pro-
hibit possession in a cell of the items seized. Vose, in his af-
fidavit, states that the items were properly removed for
reasons of prison security and will be returned to Jackson
when he leaves S.E.C.C. On this claim, Jackson has met
his burden of showing specific facts indicating a genuine
issue for trial on whether his property was impermissibly
confiscated for reasons unrelated to prison security.[4] How-
ever, he has met this burden only with respect to the de-
fendant Vose and the latter's motion for summary judgment
on this issue should have been denied. The entry of sum-
mary judgment in favor of the other defendants was
proper.[5] We, of course, express no opinion about the merits
of Jackson's case against Vose.

[3] The items taken were a sewing machine, a steam iron, an ironing
board, and three plants.

[4] We do not view the State Tort Claims Act, G. L. c. 258, as an ade-
quate remedy for the wrongs Jackson alleges. A civil rights action may lie
for the wrongful confiscation of an inmate's property, especially if, as is
here alleged, the confiscation is part of a plan to harass the inmate. See
*Carter* v. *Estelle,* 519 F.2d 1136, 1137 (5th Cir. 1975), and cases cited.
*Parratt* v. *Taylor,* 451 U.S. 527 (1981), on which the defendants rely, was
concerned only with the appropriateness of Federal jurisdiction under 42
U.S.C. § 1983 (Supp. III 1979), over a negligent property loss where a
State procedure existed. It did not involve a choice between available
State remedies when an intentional act was concerned.

[5] There is no dispute that the defendant LeBlanc removed the items
from Jackson's cell. However, Jackson offers nothing which would in-
dicate that LeBlanc's actions were improperly motivated and that they
were not a matter of prison security. There is nothing to tie any of the
other defendants into the claim for deprivation of property.

4. *The availability of religious services.* Jackson, a Muslim, alleges that he has not been permitted to attend Muslim religious services held at S.E.C.C. and that no substitute for attendance has been made available. However, as an attachment to his affidavit, he includes a copy of a letter dated June 23, 1981, to him from one John D. Tucker, on the stationery of S.E.C.C, in which Tucker offers to try to make arrangements for Jackson to have access to a minister of his choosing.[6]  In his affidavit, Vose states that Jackson's security status prohibited his attendance at regular religious services but that a minister of Jackson's faith would be provided to him upon special request.

Prison inmates enjoy freedom of religion under the First and Fourteenth Amendments to the United States Constitution.  See *Bell* v. *Wolfish,* 441 U.S. 520, 545 (1979); *Cruz* v. *Beto,* 405 U.S. 319 (1972).  See also G. L. c. 127, § 88. However, "when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell* v. *Wolfish, supra* at 547.  The religious freedom guaranteed under G. L. c. 127, § 88, is made subject to "the discipline of any [correctional] institution so far as may be needful for the good government and safe custody of its inmates."  Jackson concedes that "certain segregated prisoners may be provided with access to individual religious counseling in lieu of group services if prison officials reasonably believe such an arrangement is necessary in the interests of safety and order."  See *McDonald* v. *Hall,* 579 F.2d 120, 121 (1st Cir. 1978); *Sweet* v. *South Carolina Dep't of Corrections,* 529 F.2d 854, 863 (4th Cir. 1975).  His contention is that there is no necessity to segregate him in this way because he has been allowed association with other prisoners and because other "similarly situated and classified inmates" are allowed to attend group services.

---

[6] This letter also refers to a letter from the defendant Amaral to Jackson, dated August 21, 1980 (before the present action was commenced), in which apparently a similar offer was made.

Jackson's statement concerning "other similarly situated and classified inmates" is not based on personal knowledge and so need not be given weight on the motion for summary judgment. *Stetson* v. *Selectmen of Carlisle, supra* at 763 n.12.[7] Aside from this statement, Jackson has made no assertion that other maximum security, protective custody inmates in the "fort" have been permitted to attend religious services.[8] The fact that Jackson has been allowed to be with other inmates in the law library and visiting room says nothing about the security risks that would be attendant upon letting him join in group religious services. There is, thus, nothing to rebut Vose's statement in his affidavit that Jackson's security status precludes his attendance at group religious services. Jackson also does not contest that prison officials have offered to try to make arrangements for him to be visited by a Muslim minister.[9] Under the circumstances, that is all Jackson could demand. See *McDonald* v. *Hall*, 579 F.2d 120 (1st Cir. 1978). Given this offer and the fact that Jackson has argued here only that there is no

---

[7] The statement also does not indicate whether "similarly situated" is intended to refer to confinement in the "fort" or protective security status or both.

[8] A letter from the secretary of the Islamic Community at S.E.C.C., dated August 14, 1980, and addressed to the deputy superintendent of the institution is included as an attachment to Jackson's affidavit. The letter is a formal request from the Islamic community that Jackson be allowed to attend one of its services. The letter states that "[w]e are aware of his [Jackson's] status (security wise)." This letter is at least an indication that inmates with Jackson's status were not regularly permitted to attend group religious services. We note, however, that Vose, in his affidavit, states that "religious services are generally available . . . [but that] in the case of Mr. Jackson, his status would prevent him from partaking in the normal services."

[9] As noted previously, Jackson included a letter in which such an offer was made as an attachment to his affidavit. In his brief before this court, he also acknowledges that Vose has offered to arrange for the services of a minister. In this light, we do not read Jackson's statements that "[d]efendants have made no other arrangements to supply religious services to plaintiff" and "no alternative to attendance was ever provided" to mean that offers to supply services have not been made. Rather, we read these statements literally to mean only that no services have in fact been arranged.

necessity to deny him access to group services, we think that summary judgment in favor of the defendants was proper on this issue.

5. *The refusal to sell fruit.* Inmates of S.E.C.C. are allowed to purchase certain personal items at a canteen located on the grounds of S.E.C.C. and operated under the control of the superintendent of the institution. Affidavits from the defendants, Charles Gaughan, the superintendent of M.C.I. Bridgewater, and Carol Bergstrom, a supervisory employee at the canteen, state that the canteen does not provide fruits and vegetables as part of its regular service but that it has been the practice of employees at the canteen to fulfil voluntarily and gratuitously inmate requests for fruit by making purchases at a local supermarket, if possible. According to the affidavits of Gaughan, he allowed the practice with the understanding that items provided would not be considered items of the institution.[10] It is undisputed that Jackson was not allowed to make fruit purchases through the canteen on a number of occasions. According to Gaughan and Bergstrom, the canteen stopped providing fruit to Jackson, on the advice or direction of Gaughan and the defendant, Ronald Amaral, superintendent of S.E.C.C., after Jackson wrote a letter to Bergstrom complaining about the quality of fruit he was receiving and threatening legal action if the quality did not improve.[11]

Jackson claims that denial of his opportunity to purchase fruit "is a clear case of discrimination and de facto discrimination against [his] religion." We fail to see how Jackson has been denied any rights secured to him under either

[10] It appears that until September, 1980, inmates submitted their requests for fruit on the same order slips provided by the canteen on which they ordered regular canteen supplies.

[11] Jackson alleges that a number of his orders for fruit, made prior to the defendant's refusal to purchase fruit for him, went unfilled. The defendant Bergstrom submits in her affidavit that these orders were not filled because the items Jackson ordered were not available at the store. Our holding that the defendants had the right to refuse to provide fruit to Jackson obviates any claims he could make as a result of his orders being unfilled.

Federal or State law or under any provision of the Federal or State Constitutions by the defendant's discontinuance of a voluntary service. An informal institutional policy to allow canteen employees to provide favors to the inmates hardly rises to the level of a legally protected right. It follows that the entry of summary judgment for the defendants on this issue was proper.

6. *The motion to dismiss.* We have said above that Jackson does not, as a prison inmate, have a right to work. It follows that the allegation in the complaint against the defendant Donahue for interfering with Jackson's alleged right to work was properly dismissed.

*Conclusion.* The judgment in favor of the defendant Vose, on the issue of confiscation of property, is reversed. In all other respects the judgments entered pursuant to the motions for summary judgment and pursuant to Donahue's motion to dismiss are affirmed.

*So ordered.*