Sam A. JACKSON, Jr.

v.

Lois RUSSO, et al.

Civil Action No. 06–12044–RGS.

United States District Court,
D. Massachusetts.

July 11, 2007.

Sam A. Jackson, Jr., Shirley, MA, Pro se.

Daryl F. Glazer, Department of Correction, Boston, MA, for Lois Russo and Ryan M. Carney.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

### BACKGROUND

Plaintiff Sam A. Jackson, Jr., is an inmate at the Souza Baranowski Correctional Center (SBCC) in Shirley, Massachusetts. Defendant Lois Russo is the Superintendent of SBCC. Defendant Ryan M. Carney is SBCC's Institutional Grievance Officer (IGO). Jackson's lawsuit involves prison regulations that govern the

ways in which Massachusetts inmates receive vocational training, are assigned to prison jobs, and in some instances, compensated with a modest wage and an award of "good time" credits.[1] Jackson alleges that disparities in the benefits received by inmates enrolled in different prison vocational training programs violate the constitutional guarantees of due process and equal protection. Because the court is being asked by defendants to dismiss the lawsuit pursuant to Fed. R.Civ.P. 12(b)(6), the court will take all facts alleged in the Complaint as true, supplemented by those facts asserted in Jackson's cross-motion for summary judgment that are not in dispute.

At various times while incarcerated at SBCC, Jackson enrolled in the prison Barber School, a vocational training program established under the auspices of Mass. Gen. Laws c. 127, § 48. The statute authorizes the Commissioner of Correction to provide education and vocational programs for the benefit of inmates.[2] Barber School students cut the hair of other inmates as part of their training. They are not paid for their services.[3] Inmates enrolled in the culinary arts program, on the other hand, receive the equivalent of $1.00 per day for a 5–day work week. Culinary arts students also receive five days of "good time" credit for each month of good behavior. Barber School students, on the other hand, are able to earn only two and one-half days of good time credit each month.

Based on these differences, Jackson filed a grievance with IGO Carney. On August 17, 2006, IGO Carney rejected the grievance on grounds that the Barber School had been classified by the Commissioner as a vocational training program and not as a work assignment, and that compensation was therefore not authorized under prison regulations. He also held that Jackson had received all of the good time credits to which he was entitled for his attendance at the Barber School. Jackson appealed the decision to Superintendent Russo, who concurred with IGO Carney's rulings.

On November 6, 2006, Jackson filed this Complaint in the federal district court seeking a declaration that his constitutional rights had been violated. He also seeks the compensation and good time credits to which he had laid claim in the grievance. On March 12, 2007, Superintendent Russo and IGO Carney filed this motion to dismiss. On April 24, 2007, Jackson filed a cross-motion for summary judgment. The court will first turn to the motion to dismiss as it is dispositive of the case.

## DISCUSSION

A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct: 99, 2 L.Ed.2d 80 (1957). The court should "accept as true the well-pleaded factual alle-

---

**1.** "Good time" credits are a reward for good behavior. They result in a reduction of a prisoner's sentence. They may be earned to a monthly maximum of seven and one-half days. *See* Mass. Gen. Laws c. 127, § 129D.

**2.** Jackson initially enrolled in the Barber School in August of 2001 for approximately one year until he was released on parole. He re-enrolled briefly in October of 2005, and then again in June of 2006. He was enrolled

in the School at the time the Complaint was filed.

**3.** Mass. Gen. Laws c. 124, § 1(r), authorizes the Commissioner to require non-indigent inmates to pay a reasonable fee for prison haircuts. According to Jackson's Complaint, inmates who can afford to pay are charged $1.50.

gations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998). However, in making this assessment, a court "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). The elements of a cause of action under 42 U.S.C. § 1983, the Federal Civil Rights Act, are "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of a right secured by the Constitution or laws of the United States." *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir.1987). *See also Chiplin Enters., Inc. v. City of Lebanon*, 712 F.2d 1524, 1526–1527 (1st Cir.1983). The first element of § 1983, that Superintendent Russo and IGO Carney are state officials and that the denial of Jackson's grievance was an exercise of official authority, is not open to dispute. *See West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). With respect to the second element, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Due Process and Equal Protection Clauses of the Fourteenth Amendment are the sources of the federal rights that Jackson claims entitle him to redress.

*Property Interests*

■ Section 1983 creates a species of tort liability in favor of persons who suffer "deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "The procedural protections of due process apply, however, only if there is an existing liberty or property interest at stake." *O'Malley v. Sheriff of Worcester County*, 415 Mass. 132, 135, 612 N.E.2d 641 (1993). "Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. Although the underlying property interest may be a creation of state law, whether that interest is tangible enough to merit the status of an entitlement protected by the Due Process Clause is a question of federal constitutional law. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The interest to which an entitlement is claimed must be specific, something more than a need or desire, or a unilateral expectancy. *Id.* A benefit or interest is also not protected "if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005).

■ Jackson's claim that as a prison barber he has a due process right to compensation might be argued in two ways, either as a personal right to engage in for-profit business activity while incarcerated, or as an entitlement to payment by prison authorities for the tonsorial services he provides to fellow inmates. Neither "right" however, is established by the federal Constitution. "[A] prisoner has no recognized right to conduct a business while incarcerated.... [T]he fourteenth amendment affords no protection to in-

mate business activities." *French v. Butterworth,* 614 F.2d 23, 24 (1st Cir.1980). *See also Garza v. Miller,* 688 F.2d 480, 485–486 (7th Cir.1982) (a prison inmate has no constitutionally-based property or liberty interest in prison employment or educational courses); *Garland v. Polley,* 594 F.2d 1220, 1221 (8th Cir.1979) (a prisoner has no constitutionally-created liberty or property right to operate a business within the institution); *Valentine v. Gray,* 410 F.Supp. 1394, 1396 (S.D.Ohio 1975) (same, operating an outside business from within the institution). The Supreme Judicial Court has expressly held in an equal protection context that Massachusetts inmates "do not have an unqualified right to work and to receive the attendant benefits." *Jackson v. Hogan,* 388 Mass. 376, 379, 446 N.E.2d 692 (1983). *See also Murphy v. Cruz,* 52 Mass.App.Ct. 314, 319, 753 N.E.2d 150 (2001).

 If there is a property right to a prison job or to compensation for a prison work assignment, the right would have to be one grounded in positive State law. It has long been the rule that a State may vest a prisoner with a protected property interest by operation of its statutes and regulations. *See Wolff v. McDonnell,* 418 U.S. 539, 556–557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (good time credits statute). The Massachusetts statute on which Jackson relies, Mass. Gen. Laws c. 127, § 32, however, confers no such right. It simply exhorts superintendents of correctional institutions to treat inmates "with the kindness which their obedience, industry and good conduct merit." A more relevant statute, Mass. Gen. Laws c. 127, § 48A, expressly authorizes the Commissioner to establish a system of inmate compensation.

Subject to appropriation from the General Fund, the commissioner shall establish a system of compensation for inmates of the correctional institutions of the commonwealth who perform good and satisfactory work either within the industrial program or in the servicing and maintenance of the correctional institutions or in the prison camps. Upon the recommendation of any superintendent, the commissioner may establish a graduated scale of compensation to be paid inmates in accordance with their skill and industry, and the commissioner shall establish, and may at any time amend or annul, rules and regulations for carrying out the purposes of this section. No money shall be paid directly to any inmate during the term of his imprisonment.

The statute, as is apparent on its face, is premised on several contingencies including the appropriation of funds by the Legislature and the power of the Commissioner to amend or annul the implementing rules "at any time."

There is also no requirement in Massachusetts law that a correctional institution provide any specific type of vocational training or opportunity. Mass. Gen. Laws c. 127, § 48, provides that:

[t]he commissioner shall establish and maintain education, training and employment programs for persons committed to the custody of the department.... Such programs shall include opportunities for academic education, vocational education, vocational training, other related prevocational programs and employment, and may be made available within correctional facilities or, subject to the restrictions set forth in sections forty-nine and eighty-six F, at other places approved by the commissioner or administrator.[4]

---

4. Mass. Gen. Laws c. 124, § 1(e), which defines the powers and duties of the Commis-

fines the powers and duties of the Commis-

The statute, however, confers complete discretion over education, training, and employment programs on the Commissioner. *See Commonwealth v. Langton*, 25 Mass.App.Ct. 947, 947, 518 N.E.2d 534 (1988) (noting that the statute was revised by the Legislature in 1972 to make eligibility for inmate work assignments discretionary); *Haverty v. Comm'r of Corr.*, 440 Mass. 1, 6, 792 N.E.2d 989 (2003) (it is within the discretion of the Commissioner to make different programs available to inmates at different institutions); *Dupont v. Saunders*, 800 F.2d 8, 10 (1st Cir.1986) (absent state law to the contrary, inmates have no vested property interest under the Due Process Clause to obtain or maintain prison jobs). Jackson can point to no law or regulation that confers a protected property interest on an inmate in any particular prison job, or for that matter, in any job at all.

*Liberty Interest*

 The Supreme Court has held that in order to create a protected due process liberty interest, State laws or regulations must "contain 'explicitly mandatory language,' i.e. specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow...." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). This rule was originally derived from *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The *Hewitt* rule, however, was criticized in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), on grounds that "the search for a negative implication from mandatory language in prisoner regulations ha[d] strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id.* at 483,

115 S.Ct. 2293. *Sandin* held that the *Hewitt* line of cases had not only "create[d] disincentives for States to codify prison management procedures," it had also deflected the attention of the courts from "grievous" losses of liberty into the mundane day-to-day management of prisons, "often squandering judicial resources with little offsetting benefit to anyone." *Id.* at 480, 482, 103 S.Ct. 864. While not overruling *Hewitt*, the *Sandin* Court held that State-created interests deserving of due process protection would be "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483–484, 115 S.Ct. 2293. Here, there is no evidence that Jackson's sentence was extended beyond its term or that the Commissioner's refusal to award additional good time credits to inmates who enroll in the Barber School created an atypical prison hardship. As with prison job assignments, there is no constitutional, statutory, or regulatory right to good time credits. *Haverty*, 440 Mass. at 5–6, 792 N.E.2d 989. *See also Childers v. Maloney*, 247 F.Supp.2d 32, 37 (D.Mass.2003) (expressly holding that a prisoner has no liberty interest in a job assignment that results in good time reductions of his sentence). While prison regulations permit an inmate to be awarded a maximum of 7.5 days of good time for satisfactory performance in a work assignment, an educational or vocational training program, or some other redemptive activity approved by the Commissioner, the awards are granted in 2.5 day increments for participation in each of the three separate categories of programs. *See* Mass.

sioner, is to the same effect.

Gen. Laws c. 127, § 129D; 103 Code Mass. Regs. § 411.09(1)(a). Again, there is no evidence that Jackson was unfairly denied the right to participate in other prison activities that might have earned him additional good time credits over and above those he received as a prison barber.

*Equal Protection*

That the rational relationship test and not strict scrutiny is to be applied in reviewing legislative and regulatory schemes allocating good time credits and prison jobs is beyond dispute (Jackson does not suggest otherwise). *See McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). "Under rational basis scrutiny, a classification will withstand a constitutional challenge as long as it is rationally related to a legitimate state interest and is neither arbitrary, unreasonable nor irrational.... Courts applying the rational basis standard must give considerable deference to legislative policy determinations and refrain from setting aside a statutory discrimination if 'any state of facts reasonably may be conceived to justify it.'" *LCM Enters., Inc. v. Town of Dartmouth*, 14 F.3d 675, 679 (1st Cir. 1994), quoting *Bowen v. Gilliard*, 483 U.S. 587, 600–601, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987). "Plaintiffs who claim an equal protection violation must 'identify and relate specific instances where persons situated similarly "in all relevant aspects" were treated differently....'" *DuPont v. Comm'r of Corr.*, 448 Mass. 389, 399, 861 N.E.2d 744 (2007), quoting *Cote–Whitacre v. Dep't of Pub. Health*, 446 Mass. 350, 376, 844 N.E.2d 623 (2006).

"Under the rational relationship test, we 'inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose.'" *McNeil v. Comm'r of Corr.*, 417 Mass. 818, 827, 633 N.E.2d 399 (1994). A classification will be upheld if any conceivable state of facts will support the line drawn by the state. *Massachusetts Fed. of Teachers, AFT, AFL–CIO v. Bd. of Educ.*, 436 Mass. 763, 777, 767 N.E.2d 549 (2002). Legislative line drawing does not violate equal protection principles simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911). "Only if the law imposes unequally on a protected class or burdens a fundamental right, will it be subjected to more searching scrutiny." *Opinion of the Justices*, 423 Mass. 1201, 1232, 668 N.E.2d 738 (1996). "The question is not what went on in the mind of the state actor but whether anyone, including the judge, can conceive of a rational reason for such a classification." *Jeneski v. City of Worcester*, 476 F.3d 14, 17 (1st Cir. 2007). *See Nordlinger v. Hahn*, 505 U.S. 1, 15–16, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("[T]he equal protection clause does not demand for purposes of rational-basis review that a legislature or governing decision maker actually articulate at any time the purpose or rationale supporting its classification.").[5]

A rational basis for the more favorable treatment received by participants in the culinary arts program is not difficult to conjure. It might be assumed, for ex-

---

**5.** "A party claiming standing to challenge the validity of a statute under the rational basis standard of review 'has an onerous burden of proof.'" *Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Board*, 416 Mass. 635, 640–641, 624 N.E.2d 556 (1993), quoting *Marshfield Family Skateland, Inc. v. Marshfield*, 389 Mass. 436, 446, 450 N.E.2d 605 (1983).

ample, that the culinary arts program is more demanding in the nature of the work that participants are expected to perform and the hours that they are required to keep. A barber has greater flexibility in shaping the conditions of his working environment than does a kitchen aide. And the milieu of a barber shop compares favorably with the heat of a kitchen stove or a sink of dirty dishes. It might also reasonably be thought difficult to recruit inmates as scullery workers, cooks, and servers (at least on a voluntary basis) without offering some incentives over and above those offered to barbers-in-training.[6] These presumed distinctions between the terms and conditions of the two vocational programs provide a rational basis for the lines drawn by the Commissioner. In any event, differences in the levels of compensation received by prison barbers and kitchen workers do not, at least in the circumstances of this case, warrant micromanaging by the federal courts. *See Dominique v. Weld,* 73 F.3d 1156, 1160 (1st Cir.1996) ("[F]ederal courts are not authorized by law to second-guess the policies of prison administrators.").[7]

### ORDER

For the foregoing reasons, defendants' motion to dismiss is *ALLOWED*. Plaintiff's motion for summary judgment is *MOOT*. The case will be closed.

SO ORDERED.

---

6. The basis for awarding kitchen workers twice the good time credits as barbers is not a matter for speculation. As Jackson's Complaint concedes, the culinary arts program is classified as both a vocational training program and as a work assignment. (The Barber School is classified as a vocational training program only). *See* 103 Code Mass. Regs. § 411.09(1)(a).

7. If a statute does not violate equal protection, "it follows *a fortiori* that [it] does not violate the Fourteenth Amendment's Due Process Clause." *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 470 n. 12, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).